IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAUNE′ PIERCE, an individual; and RALPH PIERCE, an individual, | CIVIL NO. 19-00198 JAO-KJM |
| Plaintiffs, | |
| vs. | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| KUALOA RANCH HAWAII, INC., a corporation, et al., | |
| Defendants. | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Jaune′ and Ralph Pierce, a married couple, bring this personal injury action against Defendant Kualoa Ranch Hawaii, Inc. ("Defendant") after Mrs. Pierce sustained injuries from an accident during a guided all-terrain vehicle ("ATV") tour at Defendant's ranch.  Before the Court is Defendant's Motion for Summary Judgment ("Motion").  ECF No. 49.  For the reasons stated below, the Court DENIES Defendant's Motion.

1

# I.    BACKGROUND

## A.    Facts[1]

In May 2017, Plaintiffs and their son were vacationing on Oʻahu and signed up for a guided ATV tour at Kualoa Ranch.[2]  *See* ECF No. 1 (Complaint) ¶¶ 6–7; ECF No. 19 (Answer) ¶¶ 6–7.  While Mrs. Pierce knew what an ATV looked like and understood that she would be riding an open-air vehicle around the ranch, she had never driven one before.  ECF No. 50 ("Def. CSF") ¶ 15; ECF No. 58 ("Pls. CSF") ¶ 37; ECF No. 52-3 at 12.

Prior to the tour, Plaintiffs signed a "Liability Release Waiver," which read:

> The undersigned is aware that participating in an ATV (All-Terrain Vehicle) tour of Kualoa Ranch Hawaiʻi is potentially dangerous and can result in serious injury or death.  Each rider is in total control of the vehicle and may unintentionally collide with rocks, trees, other riders or even flip over if he/she loses control of the vehicle. It is critically important that each participant or legal guardian(s) of minors, who are participating in this ATV Tour, understand and accept these risks and use extreme caution while participating in the ATV Tour.

ECF No. 42-8; *see* Def. CSF ¶ 17.  Defendant then played a safety video for the tour participants, outfitted riders with helmets, and had the riders drive through a short training course.  *See* Def. CSF ¶¶ 18, 21, 26.  The training course featured

---

[1]  Unless otherwise indicated, the following facts are undisputed.

[2]  Kualoa Ranch is a private nature reserve and cattle ranch that includes steep cliffs and rainforest terrain.  *See* About Kualoa, https://www.kualoa.com/about/ (last visited Oct. 27, 2021).

2

different terrain than the riders faced during the tour.  Pls. CSF ¶ 21.  Whether and to what extent Mrs. Pierce could hear the video and to what extent Defendant assessed Mrs. Pierce's skill through the course are disputed.  Def. CSF ¶ 20; ECF No. 42-5 at 19.

Once the tour began, Mrs. Pierce was the second to last rider in a line of ATVs, with her husband in the rear.  Def. CSF ¶ 31.  The tour took the group over various trails and stopped twice prior to Mrs. Pierce's accident.  *Id.* ¶ 33.  At some point, the group passed a portion of the trail called "Skull Gate."  *See* Pls. CSF ¶ 20.  Plaintiffs assert that Defendant failed to follow its own policy on the tour and stop at Skull Gate to check whether riders felt comfortable to proceed.  *Id.*

After the second stop, Mrs. Pierce felt that the group ahead of her accelerated to a speed with which she was uncomfortable.  Def. CSF ¶ 35; ECF No. 42-5 at 31.  The parties dispute whether Plaintiffs became separated from their guide and other riders.  *See* Pls. CSF ¶ 27; ECF No. 63 ("Def. FCSF") ¶ 27.  Descending a hill, Mrs. Pierce drove on the left side of the trail and her left tire became caught in a rut.  Def. CSF ¶ 36; Pls. CSF ¶ 29.  Mrs. Pierce tried to steer out of the rut, but rather than exit the rut, the ATV lifted up and then slammed down.  ECF No. 58-3 at 15.  Mrs. Pierce then lost control of the ATV, was partially thrown from it, and then dragged behind the vehicle.  *Id.*  As a result, Mrs. Pierce sustained a broken hip and pelvis, and brain, neck, and spinal injuries.  ECF

3

No. 1 ¶ 17.

## B.  Procedural History

Plaintiffs brought this lawsuit against Defendant alleging the following claims:  Count 1 — Negligence; Count 2 — Willfulness and Wantonness; Count 3 — Failure to Warn; Count 4 — Premises Liability; and Count 5 — Loss of Consortium.  *See* ECF No. 1.  Defendant seeks summary judgment as to all claims. *See* ECF No. 49.

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party.  *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or

reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986)) (footnote omitted).  Inferences must be drawn in favor of the nonmoving party.  *See id.*  However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law.  *See id.* at 631–32.  If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial.  *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988)).

## III.   DISCUSSION

Defendant asserts that it is entitled to summary judgment on two grounds. First, Defendant contends that the doctrine of primary implied assumption of risk bars Plaintiffs' claims because Mrs. Pierce assumed the risk that she could be injured by the inherent hazards associated with riding an ATV.  *See* ECF No. 49 at 17.  Second, Defendant argues that the undisputed facts cannot sustain an award of punitive damages.  *Id*. at 22.  Plaintiffs counter that the doctrine of primary implied assumption of risk has no bearing on this case because Hawaiʻi Revised Statutes

6

("HRS") § 663-1.54, which concerns recreational activity liability, has cabined the common law doctrine. *See* ECF No. 57 at 13–15. Alternatively, Plaintiffs argue that the doctrine is inapplicable to the facts of this case. *Id.* at 15–26. Regarding punitive damages, Plaintiffs contend that there is at least a factual dispute as to whether Defendant's conduct rises to the requisite level of gross negligence required for punitive damages. *Id.* at 26–29.

The Court outlines the common law doctrine before turning to the parties' arguments.

## A.    An Overview of the Primary Implied Assumption of Risk Doctrine

An assumption of risk defense "is generally categorized as either express, in the sense of an express contract to relieve the defendant of certain duties,[3] or implied, where relief from liability is implied from the plaintiff's act of electing to participate in the underlying activity despite known or reasonably foreseeable risk." *Foronda ex rel. Estate of Foronda v. Hawaii Int'l Boxing Club*, 96 Hawai'i 51, 59, 25 P.3d 826, 834 (App. 2001).[4] The implied assumption of risk doctrine is further broken down into primary and secondary versions of the defense. "Used in

---

[3]  The Court need not address the express assumption of risk doctrine because Defendant disclaims any reliance on its purported liability waiver. *See* ECF No. 49 at 3.

[4]  Because this is a diversity case, substantive Hawai'i law applies. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415 (1996).

its primary sense, assumption of risk describes the act of a plaintiff, who has entered voluntarily and reasonably into some relation with a defendant, which plaintiff knows to involve the risk." *Larsen v. Pacesetter Sys., Inc.*, 74 Haw. 1, 35, 837 P.2d 1273, 1290 (1992). By contrast, the secondary form of the defense is better thought of in terms of comparative negligence in that it "focuses on a plaintiff's conduct, and describes a situation where plaintiff knows of the danger presented by a defendant's negligence and proceeds voluntarily and unreasonably to encounter it." *Id.* at 36, 837 P.2d at 1291; *see Foronda*, 96 Hawai'i at 59, 25 P.3d at 834 (quoting *id.*). Although in theory these classifications are neat and distinct, "[t]he doctrine of assumption of risk has been a subject of much controversy and confusion, in large part because it encompasses, under the deceptively simple construct that a plaintiff has deliberately subjected himself to danger, the concepts of plaintiff's consent, defendant's lack of duty, and plaintiff's contributory negligence." *Larsen*, 74 Haw. at 34, 837 P.2d at 1290 (citations omitted).

Defendant relies on the primary implied form of the defense, which Hawai'i state courts have examined in the context of suits involving injuries occurring during sports or recreational activities. *See, e.g.*, *Yoneda v. Tom*, 110 Hawai'i 367, 133 P.3d 796 (2006). The touchstone inquiry into whether the primary implied assumption of risk defense applies is whether "the defendant's conduct at issue is

8

an inherent risk of the sports activity." *Foronda*, 96 Hawai'i at 66, 25 P.3d at 841. To determine whether a risk is inherent to an activity, courts "consider the nature of the activity, the relationship of the defendant to the activity and the relationship of the defendant to the plaintiff." *Id.*

However, even if a risk is inherent, the doctrine does not relieve a defendant involved in risky activities of all duties.  For example, "[a] defendant may be held liable to the plaintiff for creating or countenancing risks other than risks inherent in the sport, or for increasing inherent risks, and in any event will be held liable for recklessly or intentionally injurious conduct totally outside the range of ordinary activity involved in the sport." *Id.*

Thus, the inquiry involves two steps.  First, courts ask whether a risk is inherent to the activity.  *See Yoneda*, 110 Hawai'i at 379, 133 P.3d at 808.  If it is, second, courts examine whether the defendant either somehow increased the risk, or was recklessly or intentionally injurious.  *See id.* at 380, 133 P.3d at 810.

While the parties here generally agree on the contours of the primary implied assumption of risk defense, Plaintiffs challenge whether the defense is viable in light of HRS § 663-1.54.  Because the parties present no Hawai'i caselaw on the statute, the Court first addresses the common law defense.

**B.  Applying the Common Law Defense**

To address whether Defendant may prevail at summary judgment on the

primary implied assumption of risk defense, the Court must determine (1) whether Mrs. Pierce suffered injuries from an inherent risk, and if so, (2) whether Defendant can sustain its burden on summary judgment to (a) show that there is no triable issue as to whether it increased the inherent risk of the activity, or (b) show that it did not recklessly or intentionally injure Plaintiff.  The Court concludes that factual issues exist as to whether Defendant increased any inherent risk in the activity and so denies Defendant's Motion.

### 1.     Inherent Risk

The parties dispute whether the accident Mrs. Pierce suffered was from a risk inherent to the activity.  But because the Court concludes below that Plaintiff proffered sufficient evidence that Defendant increased any inherent risk, the Court need not decide the issue.  Thus, the Court will assume without deciding that Mrs. Pierce suffered injuries from an inherent risk, and will proceed to the next step of the inquiry.

### 2.     Evidence of Increased Risk

Even assuming that Mrs. Pierce suffered injuries from an inherent risk of a guided ATV tour, Plaintiffs have presented sufficient evidence to defeat summary judgment as to whether Defendant increased that inherent risk.

Plaintiff has presented evidence on several different theories of negligence that caused Mrs. Pierce's accident.  *See generally* ECF No. 57 at 5–12.  These

include:

- That Defendant failed to adhere to industry standards regarding the proper composition of ATV trails and that Mrs. Pierce's accident occurred at a spot that approximated asphalt and had loose gravel on which ATVs should either never be driven or only be driven by expert riders;

- That Defendant created the rut of loose gravel that Mrs. Pierce got stuck in causing her to lose control of the ATV;

- That Defendant failed to properly train Mrs. Pierce for the terrain she would face, or properly guide her during the tour;

- That Defendant failed to follow protocol regarding tire pressure and that an underinflated tire contributed to Mrs. Pierce's accident;

- That Defendant brought Mrs. Pierce as an inexperienced rider past a point on the trails without checking whether she was comfortable to proceed;

- That Defendant removed the owner's manuals from the ATV.

*Id.*[5]

Many of Plaintiffs' theories are based on the declaration of their expert Bill Uhl.  *See* Pls. CSF ¶¶ 1, 18, 23; ECF No. 58-2 (Uhl Decl.).  For example, Uhl declares that Defendant:

intentionally laid down an unnatural surface on the part of the route at the incident location, putting down ground-up asphalt and compacting it into the existing surface.  This made the surface have the characteristics of an asphalt road but with holes

---

[5]  The Court need not address each of these theories because a factual dispute as to whether any one of them increased the activity's inherent risk is sufficient to deny Defendant's Motion.

> and loose soils/rocks scattered around and on this asphalt material.

ECF No. 58-2 at 9.  Uhl continues that Defendant's treatment of the road violated manufacturer guidance and created a dangerous situation.  *Id.* at 9–10.  Uhl also declares Defendant created the rut on the left side of the trail that filled with loose gravel, and that Defendant had "created a dangerous condition above and beyond the normal conditions of [its] ATV trails."  *Id.* at 9; *see also* Pls. CSF ¶¶ 22–23.  The condition purportedly created terrain suitable only for more experienced ATV drivers who had "learned and practiced the skills necessary to control the ATV on such terrain."  *See* ECF No. 58-2 at 9–10; Pls. CSF ¶ 23.

Defendant fails to sufficiently respond to these facts in order to obtain summary judgment.  As to the trail composition, Defendant seemingly relies on its argument that rough terrain or bumpy roads are inherent risks of ATV riding.  *See* ECF No. 62 at 10.  It does not direct the Court to any undisputed evidence in the record that a ground up asphalt trail is appropriate for an ATV tour.  Rather, Plaintiffs put the issue into dispute by highlighting Defendant's treatment of the trail that may have increased the danger of the tour.

Next, as to the alleged rut in the trail, Defendant offers a picture of the trail, ECF No. 42-10, and argues that "a photograph is worth a thousand words and holds more credence than any one person's characterization of what is

12

'dangerous.'" ECF No. 62 at 9. But this is Defendant's motion for summary judgment. Even if the photograph may be probative to a jury at trial,[6] a jury could also consider an expert's interpretation of the photograph and conclusion that it shows a danger above the normal condition and rule for Plaintiffs.

Further, Defendant disputes that it "created" the rut. Instead, it argues that the record demonstrates that any rut at the accident site formed naturally. *See* ECF No. 62 at 9. But, viewed in the light most favorable to the Plaintiffs as the non-moving party, the record supports an inference that Defendant's actions caused the rut. *See* ECF No. 58-5 at 10–13. One of Defendant's employees who helped maintain the ATV trails testified both that it was not "intentional" that water would congregate on that part of the trail and cause a rut, but also that Defendant designed the trail with a slope to channel water to one side to remove water from middle of the road. *Id.* Thus, the record could support the conclusion that Defendant manipulated the road in a certain way to channel water out of the center, and that this decision created a dangerous condition on the side of the trail. As Defendant's employee says, "you don't want [water] really on any part of the road." *Id.* at 13.

In response to Plaintiffs' expert's assertions that the terrain at the accident site violated industry standards and that only experienced riders should have been

---

[6] The photograph seems to depict a "rut." *See* ECF No. 42-10.

allowed on that terrain, *see* Pls. CSF ¶¶ 22–23, Defendant states, "Objection. Lacks foundation.  Uhl never visited the accident site.  The photograph speaks for itself," *see* Def. FCSF ¶¶ 22–23.  As noted above, at the summary judgment stage, a disputed photograph does not speak for itself.  Further, Defendant's unexplained foundation objections are not sufficient to exclude Uhl's declaration.  *See Sandoval v. County of San Diego*, 985 F.3d 657, 666–67 (9th Cir. 2021) ("The defendants' one-word objections for 'foundation' fell well short of providing Plaintiff with notice of the specific ground of objection and, consequently, what could be done to cure any defects.  Accordingly, these objections also provided no basis for excluding the evidence."); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (holding that at the summary judgment phase, courts focus on the admissibility of evidence's content rather than its form).

There is also a triable issue on whether alleged deficiencies in Defendant's training of Plaintiffs increased the inherent risks of the ATV tour.  For one, it is disputed that Mrs. Pierce's tour guide observed her drive through the short training course before the tour.  *See* Pls. CSF ¶ 39; Def. FCSF ¶ 39.  Regardless, Uhl questions whether any short observation would have been sufficient to judge Mrs. Pierce's skills.  ECF No. 58-2 at 11.  Further, there is a dispute about whether and to what extent Plaintiffs could hear and understand the safety video played for tour participants before the start of the tour.  *See* ECF No. 42-5 at 19–20.  Mrs. Pierce

testified that it was noisy in the barn where Defendant played the video.  *Id.* at 19.

Once on the tour, the guides led the group beyond Skull Gate without stopping to ask whether Plaintiffs were comfortable to proceed.  *See* Pls. CSF ¶ 20. Plaintiffs proffered evidence that Defendant had a policy that its guides must ensure riders are confident to continue beyond the gate.  *See* ECF No. 58-2 at 6, 13; ECF No. 58-8 at 11.  Considered in the light most favorable to Plaintiffs, a jury could conclude that Defendant's omissions before and during the tour increased the danger of the activity.

For the foregoing reasons, the Court concludes there is a triable issue as to whether Defendant increased any risk inherent in a guided ATV tour.  Thus, it denies Defendant's Motion for Summary Judgment on the primary implied assumption of risk doctrine.

## C.    HRS § 663-1.54

In the alternative, the Court denies Defendant's Motion pursuant to HRS § 663-1.54.

HRS § 663-1.54 provides:

> (a) Any person who owns or operates a business providing recreational activities to the public, such as, without limitation, scuba or skin diving, sky diving, bicycle tours, and mountain climbing, shall exercise reasonable care to ensure the safety of patrons and the public, and shall be liable for damages resulting from negligent acts or omissions of the person which cause injury.

15

(b) Notwithstanding subsection (a), owners and operators of recreational activities shall not be liable for damages for injuries to a patron resulting from inherent risks associated with the recreational activity if the patron participating in the recreational activity voluntarily signs a written release waiving the owner or operator's liability for damages for injuries resulting from the inherent risks.  No waiver shall be valid unless:

> (1) The owner or operator first provides full disclosure of the inherent risks associated with the recreational activity; and

> (2) The owner or operator takes reasonable steps to ensure that each patron is physically able to participate in the activity and is given the necessary instruction to participate in the activity safely.

(c) The determination of whether a risk is inherent or not is for the trier of fact.  As used in this section an "inherent risk":

> (1) Is a danger that a reasonable person would understand to be associated with the activity by the very nature of the activity engaged in;

> (2) Is a danger that a reasonable person would understand to exist despite the owner or operator's exercise of reasonable care to eliminate or minimize the danger, and is generally beyond the control of the owner or operator; and

> (3) Does not result from the negligence, gross negligence, or wanton act or omission of the owner or operator.

HRS § 663-1.54.

Plaintiffs argue that the passage of this statute derogates the common law assumption of risk doctrine because the statute "occup[ies] the entire field of when and how a recreational business owner can escape liability in a case such as this." ECF No. 57 at 14.  Under Plaintiffs' interpretation of the statute, tour operators would be liable for negligence and could escape liability for an injury from an

16

inherent risk only if the injured had signed a valid waiver. *See id.* at 13–14.  In other words, Plaintiffs assert that HRS § 663-1.54 adds an additional requirement to recreational activity operators that seek to avoid liability for injuries from inherent risks — an express waiver requirement.  While Plaintiffs acknowledge they signed a document styled as a liability waiver, they assert that because Defendant disclaims the express waiver defense, Defendant should not benefit by defaulting to the common law rather than having to meet statutory requirements. *See id.* at 14.  Further, Plaintiffs note that subsection (c) of the statute makes the issue of whether a risk is inherent to an activity a matter for the finder of fact, rather than a legal issue for a court.  *Id.* at 15.

Defendant counters that HRS § 663-1.54 only relates to the express assumption of risk doctrine and leaves the implied form of the defense undisturbed. *See* ECF No. 62 at 4–6.  For support, Defendant notes that *Foronda* — which was decided after the passage of HRS § 663-1.54 and involved a participant that had signed a liability waiver — nonetheless applied common law.  *Id.* at 5.

Neither party cites to any case that directly addresses whether HRS § 663-1.54 affects the common law implied assumption of risk, and the Court's research failed to find one.  Thus, to address Plaintiffs' derogation argument, the Court must interpret the statute and legislative history to determine whether the legislature intended to supersede the common law.  *See First Ins. Co. of Hawaiʻi v. Lawrence*,

17

77 Hawai'i 2, 8, 881 P.2d 489, 495 (1994).  When statutory provisions appear to be "in derogation of principles of common law tort liability, they 'must be strictly construed and, where it does not appear that there was a legislative purpose in the statute to supersede the common law, the common law applies.'"  *Id.* (quoting *Doi v. Hawaiian Ins. & Guar. Co.*, 6 Haw. App. 456, 465, 727 P.2d 884, 890 (1986)) (other citations omitted).

The plain language and structure of HRS § 663-1.54 make clear the statute applies to this case, and therefore foreclose Defendant's arguments to the contrary.  *See State v. DeMello*, 136 Hawai'i 193, 195, 361 P.3d 420, 422 (2015) ("The plain language of a statute is 'the fundamental starting point of statutory interpretation.'" (quoting *State v. Wheeler*, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009))).  First, subsection (a) imposes liability on "[a]ny person who owns or operates a business providing recreational activities to the public" when the person's negligence causes injury.  HRS § 663-1.54(a).  Defendant does not argue that it is excluded from the definition of person or that ATV tours are not "recreational activities."  Common sense and the non-exclusive examples of activities in the statute — scuba or skin diving, sky diving, bicycle tours, and mountain climbing — dictate that Defendant is subject to the statute.  *See id.*

Next, subsection (b) states that notwithstanding the imposition of liability for negligence in subsection (a), recreational activity operators can avoid "damages for

injuries to a patron resulting from inherent risks associated with the recreational activity *if* the patron participating in the recreational activity voluntarily signs a written release waiving the owner or operator's liability for damages for injuries resulting from the inherent risks." *Id.* at § 663–1.54(b) (emphasis added). The use of the word "if" in the statute creates a condition that must be met to take advantage of the liability exception. Put simply, Defendant could only avoid liability for injuries sustained from inherent risks if Plaintiffs signed a valid waiver. That the statute goes on to define what constitutes a valid waiver further demonstrates that the purpose of the statute is to encourage the use of waivers and limit liability in instances when participants sign a valid release. *See id.* § 663-1.54(b)(1), (2) (waivers only valid where operator discloses inherent risks and ensures each participant is physically able to participate in activity). Because the statute purports to "define the liability" for recreational activity providers, *see* S. Stand. Comm. Rep. No. 1537, in 1997 Senate Journal, at 1476, and imposes a valid waiver requirement in order to enjoy the liability limiting aspects of the statute, the Court concludes that the statute supersedes the common law in this instance.[7]

---

[7] The legislative history supports the Court's conclusion:

> This measure is necessary to more clearly define the liability of providers of commercial recreational activities by statutorily validating inherent risk waivers signed by the participants. Your Committee further finds that these inherent risk waivers

(continued . . .)

The plain language of subsection (c) of the statute also reveals the legislature's intent to replace the common law. Under the common law, whether something was an inherent risk was a matter of law for the court. *See Yoneda*, 110 Hawai'i at 379, 133 P.3d at 808 (holding on a motion for summary judgment that getting hit by an errant ball is an inherent risk of golf); *Foronda*, 96 Hawai'i at 68, 25 P.3d at 843 (holding that falling through the ropes is an inherent risk of boxing). But subsection (c) completely flips the matter, making inherent risk an issue for the trier of fact. *See* HRS § 663-1.54(c). If the legislature had not intended to supersede the common law, it would not have imposed conditions beyond the common law requirements or completely changed how to determine whether something is an inherent risk. If the Court allowed the common law to survive alongside the statute, the statute would lose much of its force.[8]

Defendant's arguments to the contrary are unavailing. First, that *Foronda*

_____

(. . . continued)
> require providers to disclose known risks to the participants, but these waivers do not extend immunity to providers for damages resulting from negligence.

S. Stand. Comm. Rep. No. 1537, in 1997 Senate Journal, at 1476; *see also King v. CJM Country Stables*, 315 F. Supp. 2d 1061, 1065–66 (D. Haw. 2004) (quoting *id.*).

[8] For example, during the hearing, Defendant's counsel represented that Defendant disclaimed any reliance on its purported release form to avoid subsection (c) of the statute.

fails to mention HRS § 663-1.54 is not indicative the common law remains applicable alongside the statute.  Next, Defendant cites *Yoneda* as support for the continued viability of the primary implied assumption of risk doctrine in recreational settings, but *Yoneda* did "not involve any express waiver or release." *Yoneda*, 110 Hawaiʻi at 370, 133 P.3d at 800.  And *Yoneda* fails to include any citation to, let alone discussion of, the statute.[9]

Still, *Yoneda* is not inconsistent with the Court's decision today.  In *Yoneda*, the Hawaiʻi Supreme Court affirmed the grant of summary judgment on primary implied assumption of risk grounds to one defendant who was a *co-participant* in the golf round after the plaintiff was hit in the eye by a stray shot.  *See id.* at 379–80, 133 P.3d at 808–09.  As to the separate defendant owner of the golf course, the Supreme Court vacated the trial court's grant of summary judgment, concluding that there was a triable fact as to whether the owner increased the risks inherent in

---

[9]  At the hearing, Plaintiffs' counsel for the first time raised the argument that boxing and golf, the activities at issue in *Foronda* and *Yoneda*, are not "recreational activities" within the meaning of the statute.  Counsel argued that the statute intended to reach the types of guided activities that tourists participate in while on vacation — such as those listed in the statute:  scuba or skin diving, sky diving, bicycle tours, and mountain climbing — rather than more traditional sports.  The argument has some appeal, but the Court does not rely on it because it was not raised in briefing.

golf. *See id.* at 814–15.[10]  Thus, the common law doctrine may survive as a backstop in situations where there is no express waiver, or apply only to co-participants in a sport.

Based on the foregoing, the Court concludes that HRS § 663-1.54 applies to this case and would also deny Defendant's Motion on that ground.

### D.    Availability of Punitive Damages

Defendant also moves for summary judgment on the availability of punitive damages.  *See generally* ECF No. 49 at 22–23.  It argues that the undisputed facts do not demonstrate the requisite level of culpability to sustain a punitive award. Plaintiffs respond that Defendant's conscious disregard of safety protocols enables the award of punitive damages.  *See generally* ECF No. 57 at 27–29.

"Punitive or exemplary damages are generally defined as those damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future."  *Masaki v. Gen. Motors Corp.*, 71 Haw. 1, 6, 780 P.2d 566, 570 (1989) (citations omitted).  "[P]unitive damages are not

---

[10]  Defendants' reliance on *King* also fails.  *King* applied HRS § 663-1.54 and denied summary judgment to the defendants.  It did not discuss the continued viability of the common law defense, but merely noted that cases decided prior to the enactment of the statute, "*may* be pertinent to other *possibly* relevant claims and defenses such as negligence and implied assumption of risk."  *King*, 315 F. Supp. 2d at 1066 (emphases added).

awarded for mere inadvertence, mistake, or errors of judgment." *Id.* at 7, 780 P.2d at 571 (citations omitted). Gross negligence is sufficient to justify punitive damages. *See Ditto v. McCurdy*, 86 Hawaiʻi 84, 92, 947 P.2d 952, 960 (1997). Gross negligence is "an entire want of care which would raise the presumption of a conscious indifference to consequences." *Mullaney v. Hilton Hotels Corp.*, 634 F. Supp. 2d 1130, 1154 (D. Haw. 2009) (citing *Ass'n of Apartment Owners v. Venture 15, Inc.*, 115 Hawaiʻi 232, 297, 167 P.3d 225, 290 (2007)). In order to recover punitive damages, plaintiffs must prove gross negligence by clear and convincing evidence. *See Masaki*, 71 Haw. at 16, 780 P.2d at 575.

Evaluating the evidence in the light most favorable to Plaintiffs, a triable issue exists as to whether Defendant's conduct rises to the level of gross negligence. First, there is evidence that Defendant failed to comply with its own policies. For example, Defendant may have violated its own guidelines when Plaintiffs' tour failed to stop before Skull Gate so that the guides could assess whether participants were ready to proceed. *See* Pls. CSF ¶ 16. Defendant may also have failed to assess Mrs. Pierce's skills on the ATV during the short training course. *See* Pls. CSF ¶ 39. If Defendant implemented certain policies to ensure tour participants' safety, but then failed to heed such policies, there is at least a question as to whether it consciously disregarded safety. *See Pair v. Kipu Ranch Adventures, LLC*, Civ. No. 16-00139 JMS-KSC, ECF No. 60 at 4–5 (D. Haw. June

23

26, 2017) (denying defendant's motion for summary judgment on punitive damages where there was evidence that tour operator knew plaintiff had never ridden an ATV, had insufficient training programs, and did not follow its own policies).

Further, there is evidence that Defendant received the owner's manuals for the ATVs but did not retain them. *See* ECF No. 58-2 at 5–6; ECF No. 58-6 at 5; ECF No. 58-8 at 5–6. The owner's manual provides guidance on the safe operation of the vehicle. *See* ECF No. 58-6 at 11 (agreeing that an owner's manual would provide the proper procedure for checking tire pressure); ECF No. 58-2 at 6. Relatedly, Plaintiffs' expert declared that Defendant violated industry standards as to numerous aspects of running an ATV tour. *See* ECF No. 58-2 at 7. The alleged breaches include "pre-ride inspections of ATVs; construction and maintenance of the ATV trail, including at the point of the incident in this case; [and] training of guests who would be operating their ATVs, including first-time operators such as Mrs. Pierce." *Id.*; *cf. Durham v. County of Maui*, 692 F. Supp. 2d 1256, 1263–64 (D. Haw. 2010) (rejecting argument that mere compliance with industry standards requires summary judgment for defendant on punitive damages).

Finally, Plaintiffs focus on Defendant's handling of tire pressure as an example of gross negligence. When Defendant procured the ATVs, they came equipped with tire pressure gauges, *see* ECF No. 58-2 at 6, but Defendant removed

24

the gauges and instead performed visual inspections of the tires.  *See* ECF No. 58-7 at 4–7.  While Defendant would send ATVs with visually deflated tires to the mechanics, *see* ECF No. 58-7 at 6, it knew that a tire that appeared full could still be underinflated and that under inflation could cause handling issues like understeering.  *See* ECF No. 52-6 at 8–10.  Plaintiffs' expert posits that Mrs. Pierce's front left tire was underinflated, affecting her ability to regain control of the ATV and get out of the rut on the trail.  *See* ECF No. 58-2 at 8.[11]  Although there is no evidence that Defendant knew Mrs. Pierce's tire was underinflated, there is at least an inference that Defendant consciously disregarded the risks of underinflated tires.[12]

Defendant contends that undisputed evidence establishes that it took numerous safety precautions and that the presence of these protocols precludes a finding of gross negligence.  *See* ECF No. 62 at 16–18 (listing undisputed safety

---

[11]  Defendant dismisses the underinflation theory as a "complete leap in logic," but it is a reasonable inference at summary judgment.  ECF No. 62 at 10.  Plaintiffs submitted evidence that slight differences in tire pressure can affect the handling of the ATV while being indetectable on a visual inspection.  They also submitted evidence that Defendant declined to test tire pressure with a gauge.  Plaintiffs then retained an expert who examined the evidence and concluded that understeering may have contributed to the accident.  There is also evidence that underinflation causes understeering.

[12]  Defendant argues that in addition to the visual check of tire pressure, the guides would also test ride the ATVs prior to tours, *see* Def. CSF ¶ 12, but there is no indication the test rides included terrain similar to that at the accident site.

procedures such as: holding monthly safety meetings, maintaining trails every six months, showing a safety video, installing speed governors, etc.).  It cites *Grebing v. 24 Hour Fitness USA, Inc.*, 234 Cal. App. 4th 631(2015), for the premise that when a defendant has some safety processes in place it cannot be found to be grossly negligent.  *See* ECF No. 62 at 17.  *Grebing*, however, is non-precedential and is distinguishable.  In *Grebing*, the California Court of Appeal held that the defendant gym was not grossly negligent when one customer complained about a missing clip on an exercise machine just fifteen minutes before a clip malfunctioned on plaintiff's separate machine.  *See Grebing*, 234 Cal. App. 4th at 634.  The court concluded that the gym did not demonstrate a want of care by failing to inspect all clips on all machines in the fifteen minutes after the initial complaint.  *See id.* at 639.  The court bolstered its holding by adding that the gym had regular inspections in place.

Here, by contrast, Plaintiffs provide evidence that Defendant disregarded its own policies and persisted in applying a policy it knew could lead to safety issues. They further offer evidence that Defendant created a dangerous situation on the trail — potentially in violation of industry standards — by grinding up asphalt and designing the trail in a way that channeled water to the side of the road rather than off the road.  *See* ECF No. 58-2 at 7–9.  Beyond individual oversights, Plaintiffs argue that multiple breaches of safety protocol combine to raise an issue that

26

Defendant operated its tour in a grossly negligent manner.  For these reasons, the Court denies Defendant's Motion for Summary Judgment as to the availability of punitive damages.[13]

### IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, October 28, 2021.



Jill A. Otake
United States District Judge

Civil No. 19-00198 JAO-KJM, *Pierce, et al. v. Kualoa Ranch Hawaii, Inc., et al.*; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

[13]  Of course, "[u]pon a proper motion made at trial, the court may reexamine the question of whether as a matter of law plaintiffs have put forth sufficient evidence at that time to support a claim for punitive damages."  *Marquardt v. United Airlines, Inc.*, 781 F. Supp. 1487, 1493 (D. Haw. 1992).